IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2017 FEB 17 AM 9:5
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC., d/b/a ABC SUPPLY CO., INC., )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PRECISION ROOFING AND CONSULTING, LLC d/b/a PRECISION ROOFING, INC., and MICHAEL S. DUNN, )<br>)<br>)<br>)<br>Defendants. | CIVIL ACTION NO. 2:17-cv-97-WHA |

## COMPLAINT

COMES NOW the Plaintiff, American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Inc. ("ABC") and hereby sets forth its Complaint against Defendants Precision Roofing and Consulting, LLC, d/b/a Precision Roofing Inc. ("Precision") and Michael S. Dunn ("Dunn") (collectively the "Defendants").

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. § 1332. Diversity of citizenship exists and the requisite amount in controversy is satisfied.

2. Venue is proper in this Court under 28 U.S.C. § 1391 as a substantial part of the events giving rise to this claim occurred in this district.

1

## PARTIES

3. Plaintiff ABC is a corporation duly organized pursuant to the laws of the State of Delaware with a place of business in Montgomery, Alabama.

4. Defendant Precision Roofing and Consulting, LLC d/b/a Precision Roofing Inc., is a Georgia limited liability company having its registered office and its principal place of business at 1491 Gresham Road, Good Hope, Morgan County, Georgia 30641.

5. Defendant Michael S. Dunn is a citizen and resident of Morgan County, Georgia. Dunn is the president, owner, personal guarantor, and registered agent of Precision.

## FACTS

6. In March 2016, ABC decided to replace the roof on a warehouse (the "Project") it leased at 1250 East South Blvd., Montgomery, Alabama 36116 (the "Property").

7. Precision represented to ABC that Precision had a general contractor license in Alabama.

8. ABC selected Precision to construct the Project in April of 2016.

**A.** *First Construction Contract: ABC and Precision as General Contractor*

9. ABC entered into a construction contract with Precision as the general contractor to complete the Project on the Property (the "First Construction Contract") in May 2016.

10. Precision did not possess the requisite general contractor license to enter into a contract for general contracting services with ABC at the time of the First Construction Contract.

**B.** *Credit and Guaranty Agreement: ABC and Precision with Dunn as Guarantor*

11. ABC and Defendants executed a credit agreement on May 13, 2015 ("Credit & Guaranty Agreement") for materials that Precision would purchase from ABC to complete the Project.

12. Precision established a credit purchasing account to purchase materials (hereinafter, the "Account") to complete the Project.

13. Dunn, Precision's president and owner, personally guaranteed the Account.

14. ABC and Precision agreed that Precision would invoice ABC for labor and for materials that ABC supplied Precision for the Project.

15. ABC and Precision agreed that ABC would pay the total invoice and not withhold the monies for the materials ABC supplied Precision.

16. Precision would then pay the balance owed for the materials on the Account to ABC from those same proceeds immediately upon receipt.

## C. *The Construction*

17. Precision commenced work on the Project in May 2016.

18. Precision ordered roofing materials from ABC for the Project from May 2016 to October 2016.

19. ABC sold and delivered the materials to Precision.

20. Precision received an initial payment of seventy-four thousand eight hundred eighty-three dollars and sixty cents ($74,883.60) from ABC on or about May 23, 2016.

## D. *The State Licensing Board*

21. The Alabama General Contractors Licensing Board (the "Board") received information that ABC had contracted with Precision for the Project in late May 2016.

22. The Board investigated and determined that Precision did not have the proper license in the State of Alabama to perform the work as a general contractor on the Project.

23. The Board ordered Precision to cease and desist work on the project on June 2, 2016.

24. On July 21, 2016, the Board found that ABC violated the licensing requirements of the Alabama Code §§ 34-8-1 through 34-8-10 (the "GC Laws") by entering into the First Construction Contract with Precision.

25. The Board fined ABC one thousand five hundred dollars ($1,500.00) for contracting with Precision, an unlicensed general contractor.

26. Precision's failure to have a proper license rendered the First Construction Contract unlawful and invalid under Alabama law.

27. ABC engaged a new general contractor, Hammer Inc. ("Hammer"), in July 2016.

28. Precision could work legally under Hammer as a subcontractor so long as Precision's fees did not exceed fifty thousand dollars ($50,000.00).

29. Precision agreed to reduce its fees to ABC if ABC would agree to Precision returning as a subcontractor to Hammer on the Project.

30. Precision further expressly communicated that as of July 14, 2016, Precision owed ABC seventy-thousand four hundred seventy-three dollars and thirty-seven cents ($70,473.37) for materials.

**D.** *The Second Construction Contract: ABC and Hammer with Precision as Subcontractor*

31. ABC entered a contract with Hammer as the general contractor (the "Second Construction Contract") on or about August 9, 2016.

32. Hammer retained Precision as the subcontractor to complete the Project on or about August 9, 2016.

33. Hammer and Precision executed a letter agreement ("Precision Subcontractor Agreement").

34. The Precision Subcontractor Agreement was addressed to ABC and executed for ABC's benefit.

35. The Precision Subcontractor Agreement recognized and incorporated the terms of the Second Construction Contract as controlling in case of a conflict.

36. The total value of the Second Construction Contract was forty-eight thousand six hundred thirty-seven dollars and three cents ($48,637.03).

37. ABC made a second (2nd) payment to Precision in the amount of fifty-five thousand nine hundred thirty-seven dollars and sixty-seven cents ($55,937.67) on or about August 17, 2016 bringing the total paid to Precision to one hundred thirty thousand dollars ($130,821.27).

38. Precision was obligated, in return, to pay ABC for the materials ABC supplied directly from the monies ABC paid to Precision.

39. Precision accumulated a balance on the Account of seventy-one thousand two hundred forty-six dollars and forty-four cents ($71,246.44).

40. Precision resumed work on the Project as a subcontractor on or about October 5, 2016.

41. Without cause, Precision ceased working on the Project on or about October 21, 2016.

42. Precision proposed a change order on or about October 25, 2016 to expand the contracted scope of work to Hammer and ABC which would increase the cost of the Project by twenty-four thousand six hundred dollars ($24,600.00) (the "Change Order").

43. The additional tasks stated in the Change Order were already required in the Second Construction Contract.

44. The Change Order would have increased the subcontractor payments to Precision to over fifty thousand dollars ($50,000) in violation of the GC Laws.

45. The Second Construction Contract authorized ABC to approve or deny change order requests in its sole discretion.

46. Precision demanded a progress payment ("Progress Payment") before it would return to work on the Project.

47. Under the Second Construction Contract, no payment would be due until completion of the Project.

48. Precision refused to resume work on the Project without ABC's acceptance of the Change Order and receipt of the Progress Payment.

49. Hammer replaced Precision with another subcontractor to complete the Project.

50. Precision's work on the Project was deficient.

51. The roof at the Property installed by Precision leaked.

52. Precision caused damage to the skylights and other areas on the roof.

53. Precision left rubbish and debris at Property.

54. Precision improperly performed its work on the Project.

55. ABC demanded payment from Precision for outstanding invoices concerning the materials supplied and delivered to Precision from May 2016 to October 2016.

56. Precision and Dunn failed and/or refused to pay the invoices and are in default under the Credit & Guaranty Agreement.

57. ABC issued a demand to Precision for the costs and expenses ABC incurred over and above the agreed contract amount(s).

58. ABC demanded payment of other expenses including one thousand five hundred dollars ($1,500.00) for the fine the Board levied against ABC and eight hundred thirty-five dollars ($835.00) in legal fees ABC incurred with the Board matter.

F. *Precision's Non-Payments, Demands and Liens*

59. Precision responded on November 28, 2016 with a demand for payment from ABC.

60. Precision presented ABC and ABC's landlord, Lane Avenue Associates, LLC (the "Landlord") with a demand for payment claiming one hundred six thousand two hundred seventy-two dollars and seventy-three cents ($106,272.73) owed from the Project.

61. ABC rejected Precision's demand.

62. On or about November 30, 2016, ABC received a demand from a dumpster service company, Alabama Dumpster, LLC, that Precision retained and failed to pay.

63. Alabama Dumpster threatened to file a lien due to Precision's failure to pay its invoices.

64. The Landlord received the Alabama Dumpster demand and the Landlord paid the four thousand three hundred eighty-three dollars and forty-nine cents ($4,383.49) to Alabama Dumpster to avoid the lien.

65. The Landlord has demanded reimbursement from ABC.

66. On or about December 6, 2016, Precision and Dunn obtained a fraudulent lien which Dunn verified against the Property for one hundred six thousand two hundred seventy-two dollars and seventy-three cents ($106,272.73).

67. Dunn falsely attested that ABC was indebted to Precision for services Precision performed at the Project under the First Construction Contract, the Second Construction Contract, and the Change Order.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT ON FIRST CONSTRUCTION CONTRACT

68. Plaintiff hereby adopts and incorporates Paragraphs 1 through 67 as if fully set forth herein.

69. An actual justiciable controversy exists between ABC and Defendants concerning the First Construction Contract.

70. It is an actual justiciable controversy whether ABC is entitled to a refund for payments made to Precision under the First Construction Contract.

71. ABC is entitled to a judgment declaring:

   a. That Precision and Dunn violated Alabama's general contractor licensing laws by executing a contract with ABC to perform as ABC's general contractor for the Project;

   b. That the First Construction Contract entered between ABC and Precision is null and void;

   c. That Precision, as an unlicensed general contractor, has no right to any payment as a general contractor under the First Construction Contract; and

   d. That Precision and Dunn must refund all payments that ABC made to Precision as a general contractor under the First Construction Contract and any related agreements.

72. Accordingly, ABC is entitled to a declaration by the Court that the First Construction Contract is null and void and that Precision and Dunn must refund the monies, one hundred thirty thousand eight hundred twenty-one dollars and twenty-seven cents ($130,821.27), that ABC paid Precision under the First Construction Contract. ABC is entitled to further necessary or proper relief based on the Court's declaratory judgment.

## COUNT II
## FRAUD AND DECEIT
### (Precision as General Contractor)

73. Plaintiff hereby adopts and incorporates by reference Paragraphs 1 through 72 as if fully set forth herein.

74. Defendants intentionally misrepresented to ABC that Precision was a licensed general contractor.

75. Precision was, in fact, not licensed to conduct business in Alabama as a general contractor.

76. Defendants knew or should have known that their misrepresentations to ABC were false.

77. Defendants intended for ABC to rely upon Defendants' representations that Precision was a licensed general contractor.

78. ABC reasonably and justifiably relied on Defendants' misrepresentations and/or omissions to ABC's detriment.

79. ABC was damaged as a direct and proximate result of Defendants' misrepresentation and/or omissions.

## COUNT III
## QUASI-CONTRACT AGAINST PRECISION

80. Plaintiff hereby adopts and incorporates Paragraphs 1 through 79 as if fully set forth herein.

81. ABC supplied Precision materials and paid Precision to construct the Project pursuant to the First Construction Contract.

82. The Board ordered Precision to cease and desist working at the Project for failing to have a general contractor license in violation of the GC Laws.

83. Precision's violation voided the First Construction Contract as a matter of law.

84. Precision, as an unlicensed general contractor, was not entitled to any payment from ABC for its work at the Project.

85. Precision's removal caused delay and costs.

86. The Board fined ABC and ABC had to retain a licensed general contractor to replace Precision and complete the Project.

87. Under these circumstances, fairness requires that ABC be compensated.

88. Precision's retention of the monies ABC paid to Precision to start and complete the Project, would be unjust.

89. Compensation to ABC is necessary to prevent Precision from being unjustly enriched at ABC's expense.

## COUNT IV
## BREACH OF CONTRACT AGAINST PRECISION AND DUNN
### (Credit Agreement & Guaranty Agreement)

90. Plaintiff hereby adopts and incorporates Paragraphs 1 through 89 as if fully set forth herein.

91. Plaintiff and Defendants executed the Credit & Guaranty Agreement.

92. Dunn personally guaranteed the Account according to the Credit and Guaranty Agreement.

93. The Credit and Guaranty Agreement contains an implied duty of good faith and fair dealing, which required Precision to repay ABC.

94. ABC performed all of its obligations under the Credit & Guaranty Agreement.

95. Precision breached the Credit & Guaranty Agreement in failing or refusing to pay ABC pursuant to the terms of the Credit and Guaranty Agreement.

96. Dunn, as Precision's guarantor, also failed or refused to guarantee and pay ABC after Precision's payment default.

97. Precision and Dunn each breached the implied duty of good faith and fair dealing by failing or refusing to pay ABC as expected and agreed.

98. Precision and Dunn both are liable for the debt owed to ABC.

## COUNT V
## ACCOUNT STATED AGAINST PRECISION AND DUNN

99. ABC hereby adopts and incorporates Paragraphs 1 through 98 as if fully set forth herein.

100. Precision owes ABC the sum of seventy-one thousand two hundred forty-six dollars and forty-four cents ($71,246.44) in outstanding invoices for materials.

101. This debt arises from the Account.

102. Pursuant to the Credit and Guaranty Agreement, Dunn is personally obligated to guarantee Precision's debt on the Account.

103. ABC sent Precision invoices listing the transactions and indicating that no payment has been received from Precision.

104.  Precision acknowledged in writing on July 14, 2016 that Precision owed ABC the sum of seventy thousand four hundred seventy-three dollars and thirty-seven cents ($70,473.37) for materials Precision purchased from ABC for the Project.

## COUNT VI
## GOODS SOLD AND DELIVERED AGAINST PRECISION

105.  ABC hereby adopts and incorporates Paragraphs 1 through 104 as if fully set forth herein.

106.  Precision owes ABC a sum of seventy-one thousand two hundred forty-six dollars and forty-four cents ($71,246.44), for goods sold and delivered by ABC to Precision from May 2016 to November 2016 for the Project.

107.  Precision ordered materials from ABC.

108.  ABC supplied and delivered these materials to Precision.

109.  Precision has failed or refused to pay ABC for the goods ABC sold and delivered to Precision.

## COUNT VII
## MONEY HAD AND RECEIVED AGAINST PRECISION AND DUNN

110.  Plaintiff hereby adopts and incorporates Paragraphs 1 through 109 as if fully set forth herein.

111.  Precision owes ABC for money it had and received from payments ABC made to Precision in May 2016 for seventy-four thousand eight hundred eighty-three dollars and sixty cents ($74,883.60) and August 2016 for fifty thousand nine hundred thirty-seven dollars and sixty-seven cents ($55,937.67).

112.  ABC paid Precision as the Project contractor for labor and materials that Precision ordered from ABC for use at the Project.

113.    Precision deposited the payments from ABC.

114.    Precision failed and refused to pay ABC from the deposited funds for the materials Precision ordered from ABC. Precisions retention of the total sum of deposited funds received from ABC is unjust as seventy-one thousand two hundred forty-six dollars and forty-four cents ($71,246.44) of the sum belongs to ABC and was supposed to be paid back by Precision to ABC upon receipt.

## COUNT VIII
## UNJUST ENRICHMENT AGAINST PRECISION AND DUNN
### (ABC Payments for Roofing and Related Materials)

115.    Plaintiff hereby adopts and incorporates Paragraphs 1 through 114 as if fully set forth herein.

116.    From May 2016 through October 2016, Precision invoiced ABC for roofing and related materials that Precision ordered for use at the Project.

117.    Precision billed ABC for the materials along with labor. ABC paid Precision's total invoices including amounts for materials and labor with the expectation and mutual understanding that Precision would deposit the payments and then pay ABC from the deposited payments for the materials that Precision purchased from ABC on credit.

118.    Precision failed or refused to pay ABC for the materials as expected and Precision kept the funds belonging to ABC.

119.    Defendants retained the funds for their own benefit.

120.    Precision knowingly accepted and received the materials and payments from ABC.

121.    Defendants' retention of this benefit would be unjust.

## COUNT IX
## FRAUDULENT AND FALSE LIEN AGAINST PRECISION AND DUNN

122. Plaintiff hereby adopts and incorporates Paragraphs 1 through 121 as if fully set forth herein.

123. Precision and Dunn obtained a lien against the Property on the basis of material false information.

124. Precision failed to disclose that Precision lacks a subcontractor or general contractor license.

125. Precision and Dunn falsely claimed in a Verified Statement of Lien, dated December 6, 2016, that ABC was indebted to Precision for work done at the Project for one hundred six thousand two hundred seventy-two dollars and seventy-three cents ($106,272.73).

126. Precision and Dunn knew the verified statements Dunn made were false when filed.

127. Precision and Dunn knew Precision had no right to pursue and/or enforce a lien as an unlicensed contractor.

128. Precision and Dunn intended to cause ABC injury and intended to defraud ABC and/or ABC's Landlord.

129. ABC is entitled to any and all compensatory damages flowing from the fraudulent lien. ABC is also entitled and hereby demands a judgment declaring the lien is fraudulent and unenforceable, and that Precision forfeits its right to any lien on the Property upon which it sought to impress such fraudulent lien.

### COUNT X
### DECLARATORY JUDGMENT ON PRECISION'S CONSTRUCTION LIEN AGAINST THE PROPERTY

130. ABC hereby adopts and incorporates Paragraphs 1 through 129 as if fully set forth herein.

131. An actual justiciable controversy exists between ABC and Defendants Precision and Dunn concerning the construction lien Precision and Dunn filed against the Property.

132. ABC is entitled a judgment declaring:

   a. That Precision and Dunn violated Alabama law by filing a fraudulent and false lien against the Property;

   b. That Precision, as an unlicensed contractor, has no basis, right or authority to file a construction lien for one hundred six thousand two hundred seventy-two dollars and seventy-three cents ($106,272.73) for work done at the Project;

   c. That Precision, as an unlicensed contractor, has no right to any payment under the First Construction Contract;

   d. That Precision, as an unlicensed contractor, could not perform work under the Second Construction Contract for payment in excess of fifty thousand dollars ($50,000.00); and

   e. That Dunn made false statements in his Verified Statement concerning the monies claimed owed by ABC.

133. ABC is entitled to a declaration that the lien Precision and Dunn filed against the Property is null and void, a declaration that Precision and Dunn had no basis or right to file the lien, and that Dunn's verified statement is false. ABC is entitled to further necessary or proper relief based on the Court's declaratory judgment.

## COUNT XI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST PRECISION AND DUNN

134. ABC hereby adopts and incorporates Paragraphs 1 through 133 as if fully set forth herein.

135. ABC and the Landlord have contractual relations as tenant and landlord.

136. Precision and Dunn are aware of ABC's contractual relations.

137. Precision and Dunn were not a party to these contractual relations.

138. Precision and Dunn intentionally interfered with these relations.

139. Precision made a demand to the Landlord for monies that Precision falsely claimed ABC owed for work done at the Property.

140. Precision and Dunn filed a fraudulent lien against the Property in the amount of one hundred six thousand two hundred seventy-two dollars and seventy-three cents ($106,272.73).

141. Precision failed and refused to pay Alabama Dumpster, a service provider that Precision hired for the Project, which caused Alabama Dumpster to make a demand for payment and threaten a lien against the Property to the Landlord.

142. The Landlord received and paid Alabama Dumpster's demand which caused interference with the Landlord and ABC's relations.

143. As a result of Precision's interference, ABC suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, ABC hereby demands compensatory damages, together with interests, punitive damages, attorneys' fees, declaratory relief, and such other and further relief as this Court may deem proper.

Date: February 10, 2017

BY: _____
Daryl Davis (*pro hac vice* pending)
Karl Leo (LEO001)
Leo Law Firm LLC

200 Randolph Avenue
Huntsville, AL 35801
Telephone: (256) 539-6000
Facsimile: (256) 539-6024
Email: ddavis@leo-law.com

*Attorneys for Plaintiff*