IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

AMERICAN BUILDERS & CONTRACTORS )
SUPPLY CO., INC., d/b/a ABC SUPPLY CO. )
INC., )
          Plaintiff, )
v. ) Civil Action No. 2:17CV97-WHA
PRECISION ROOFING AND )
CONSULTING, LLC d/b/a PRECISION )
ROOFING, INC., and MICHAEL S. DUNN, )
           )
          Defendants. )

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This cause is before the court on a Motion to Dismiss Defendant Precision Roofing and Consulting, LLC's Counterclaim Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. #25), filed by the Plaintiff, American Builders & Contractors Supply Co., Inc. ("ABC").

ABC filed a Complaint bringing claims against the Defendant arising out of a construction contract with the Defendants for installation of a roof at ABC's Montgomery, Alabama facility. Defendant Precision Roofing and Consulting, LLC counterclaimed, bringing counterclaims against ABC for breach of express warranty (Count I), breach of implied warranties (Count II), unjust enrichment (Count III), and breach of the contract for roof installation at the Montgomery, Alabama facility (Count IV). ABC has moved to dismiss all four counterclaims.

For reasons to be discussed, the Motion to Dismiss is due to be granted as to counterclaim count IV and the remaining counterclaim counts are due to be stayed.

**II.   STANDARDS FOR MOTION TO DISMISS**

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and

takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction, while a "factual attack" challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

In the context of a Rule 12(b)(6) motion, the court accepts the factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the pleading in the pleaders' favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662*,* 678-79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a pleading need not contain "detailed factual allegations," but instead must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III. FACTS

The allegations relevant to the counterclaim counts brought by Precision Roofing and

Consulting, LLC ("Precision") are as follows:

Precision is a company engaged in the business of installing and maintaining commercial and industrial roofs. Precision alleges in its counterclaim that ABC distributed and sold roofing material called thermoplastic polyolefin ("TPO"), which Precision ordered from ABC and installed as roofs at hundreds of locations throughout its territory. Precision alleges that ABC warranted that the products would be free of defects for at least 15 years. Beginning in 2011, Precision began to receive reports from customers about defects in roofs installed using ABC's roofing material. Precision alleges that the roofing material was not designed or manufactured consistent with the heat and humidity present in the southeastern United States. Precision began to set-off funds due to ABC. Beginning in October of 2016, ABC withheld payment to Precision of funds due for installation of a roof at a facility in Montgomery, Alabama.

On February 17, 2017, ABC filed the Complaint in the instant case bringing claims against Precision arising from the roof installation at the Montgomery, Alabama facility.

On March 28, 2017, Precision filed a Complaint in the Superior Court of Gwinnett County, Georgia. In that Complaint, Precision brought claims against ABC, Carlisle Construction Materials, LLC; Carlisle Companies, Inc.; Carlisle Syntec, Inc. and Versico, LLC. Counts I through IV were brought against the Carlisle Defendants. Counts V through VII were brought against all Defendants, and Count VIII is brought only against ABC. The claims against ABC in the Georgia case are for breach of express warranty, breach of implied warranty under Georgia law, unjust enrichment, and breach of contract.

On April 17, 2017, Precision counterclaimed in this case, bringing counterclaim counts against ABC for breach of express warranty, breach of implied warranties under Alabama and

3

Georgia law, unjust enrichment, and breach of the contract.

## IV. DISCUSSION

ABC moves to dismiss Precision's counterclaims on the grounds of the first-filed rule, standing under Alabama law, lack of privity of contract, and the Alabama statute of limitations.

At the outset, the court notes that in opposing the Motion to Dismiss, Precision has clarified the scope of its claims in counterclaim counts I, II, and III. Precision states that those counts "do not involve construction work performed on Plaintiff's facility in Alabama." (Doc. #31 at p.1). Therefore, accepting Precision's representation as to the scope of the claims pled in counterclaim counts I, II, and III, the court turns to the grounds for dismissal as to all of the counterclaim counts.

A. First- Filed Rule as a Ground for Dismissal

ABC argues that this court should dismiss the counterclaim counts filed in this case under a first-filed rule, because the case filed in Georgia state court was filed before the counterclaim counts were filed in this court. Precision has responded that where concurrent cases are pending in state and federal court, the appropriate analysis to apply is the *Colorado River Waters Conservation Dist. v. United States*, 424 U.S. 800 (1976) abstention doctrine, not a first-filed rule.

In supplemental briefing, ABC has cited the court to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982), to support application of a first-filed rule when the cases are pending in state and federal court. As recognized by the Eleventh Circuit in a case decided subsequent to *Haydu*, however, the Supreme Court has stated that "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is

4

no bar to proceedings concerning the same matter in the Federal court having jurisdiction."
*Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). Following the Supreme Court, therefore, this court concludes that the pendency of a state court action filed before the federal action does not necessarily bar a federal action, but is a factor in application of *Colorado River* abstention analysis. *See, e.g., Techjet Innovations Corp. v. Benjelloun*, 203 F. Supp. 3d 1219, 1230 (N.D. Ga. 2016) (examining *Haydu*, *Ambrosia Coal*, and *Colorado River* and concluding that "the first-to-file bar does not apply to pending state and federal actions.").

      B.  *Colorado River* Abstention as a Ground for Dismissal

Abstention under the *Colorado River* analysis first requires a threshold determination that the pending federal and state proceedings involve substantially the same parties and substantially the same issues. *Ambrosia Coal*, 368 F.3d at 1330. All of the parties and claims do not have to be the same in the two actions, as long as the cases are sufficiently similar. *Id.*

If the two cases involve substantially the same issues and parties, then a court must consider six factors: (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294–95 (11th Cir. 1998). Courts also are to consider whether the concurrent cases involve a federal statute that evinces a

5

policy favoring abstention. *Ambrosia Coal*, 368 F.3d at 1331. No one factor is determinative, and the factors must be considered "flexibly and pragmatically." *Id.*

A federal court considering abstention must weigh these factors with a heavy bias in favor of exercising jurisdiction because federal courts have a "virtually unflagging obligation" to exercise jurisdiction where it exists. *TranSouth Fin. Corp.*, 149 F.3d at 1295. "[D]ismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources." *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013).

In this case, Precision has brought four counterclaims which are virtually identical to four of its claims pending in a Georgia state court case. Claims pending in both cases for breach of express warranty, breach of implied warranties, and unjust enrichment arise from issues with TPO roofing material supplied by ABC and installed by Precision. (Doc. #6, Doc. #32-1). Both cases also include a breach of contract claim based on the installation of a roof at a Montgomery, Alabama facility.

Upon review of the two pleadings--the counterclaim in this court and the Georgia complaint--it appears that the counterclaims in this case are virtually identical to the corresponding claims brought in Georgia, except that the implied warranty claim pending in Georgia specifically invokes only Georgia law, while the implied warranty claim pending here specifically invokes both Alabama and Georgia law. (Doc. #32-1 at p.10, Doc. #6 at p. 17). The court concludes, therefore, that counterclaim counts in this case and the claims in the Georgia case brought by Precision against ABC involve substantially the same parties and substantially

6

the same issues so that the *Colorado River* threshold issue is met, and the analytical factors must be analyzed. *See Ambrosia Coal*, 368 F.3d at 1330.

The first *Colorado River* factor is neutral in this case because this is not an *in rem* action. The second factor also appears to be neutral, as there has been no showing of a significant difference in convenience in litigating in Georgia and Alabama. The remaining factors, however, weigh in favor of abstention by this court.

The Georgia court obtained jurisdiction over the similar claims first. As noted earlier, Precision filed a Complaint in Georgia state court in March and filed substantially similar claims as counterclaims in this case in April, 2017. Therefore, while perhaps not strongly, this factor weighs in favor of abstention. *Cf. Forehand v. First Alabama Bank of Dothan*, 727 F.2d 1033, 1035 (11th Cir. 1984) (stating "Linda filed her federal action before she was added as a party to the bank's state court proceeding. Thus the order in which jurisdiction was obtained dictates against dismissal.").

As to the second factor of the avoidance of piecemeal litigation, district courts have reasoned that if the two cases are identical, this factor weighs in favor of abstention. *See Leaderstat, LLC v. Abisellan,* No. 8:06-cv-1337-T-23TGW, 2007 WL 5433486, at *3 (M.D. Fla. Jan. 24, 2007) ("Because the plaintiff seeks to force the defendant to defend two identical lawsuits in two different forums at unnecessary inconvenience and expense, a distinct danger of oppressively duplicative, piecemeal litigation exists. The third factor weighs strongly in favor of a stay.").

The Eleventh Circuit has cautioned, however, that although dual proceedings will likely result in some repetition of efforts and possibly some piece-by-piece decision-making, abstention

is not appropriate where there is no indication that piecemeal litigation poses an issue of any "greater waste" than in the vast majority of federal cases with concurrent state counterparts. *Ambrosia Coal & Const. Co.*, 368 F.3d at 1333. Instead, the piecemeal litigation must be "abnormally excessive or deleterious." *Id.*

One circumstance in which that standard can be met is a case involving hundreds of claims. *See Colo. River,* 424 U.S. at 820 (noting the danger of piecemeal litigation in a case involving approximately 1,000 water uses); *Romine v. Compuserve Corp.,* 160 F.3d 337, 341 (6th Cir.1998) ("Moreover, the specter of judicial duplication of effort looms particularly ominously in the class action context, where the potential for inefficiency is acute.").

In this case, there are claims pending in two courts alleged to involve "hundreds of installed roofs" at "hundreds of locations" "throughout the southeastern United States." (Doc. #6 at p.14, 15, Doc. #32-1 at p.5,6).

Two different courts applying legal principals of various states to the same claims arising from warranties made as to TPO roofing material installed on hundreds of roofs in hundreds of locations presents an issue of waste similar to that posed by claims against 1,000 water users as in the *Colorado River* decision or in a class action. The number of roofs and the number of geographic locations poses a risk of "greater waste" than "the vast majority federal cases with concurrent state counterparts." *Ambrosia Coal*, 368 F.3d at 1333. This factor, therefore, weighs in favor of abstention.

As to the fourth factor, while Precision and ABC dispute whether Alabama law applies as to some claims, "the question for dismissal purposes is not which state law applies, but rather whether federal or state law applies." *Am. Bankers Ins. Co. of Florida v. First State Ins. Co.*, 891

8

F.2d 882, 886 (11th Cir. 1990). In this case, there is no federal question at issue. *See TranSouth Fin. Corp.*, 149 F.3d at 1295 (stating that "resolution of the underlying dispute being governed by federal law is a factor that strongly suggests a federal court should exercise its jurisdiction."). Although the lack of a federal issue is not dispositive, *American Bankers Ins. Co.*, 891 F.2d at 886, in this case, the court does not conclude that this factor is neutral, but instead weighs at least slightly in favor of abstention because at least one counterclaim count is a claim expressly brought under Georgia statutory law, and the same claims are pending in the Georgia case. *Cf. Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1143 (11th Cir. 2013) (stating this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve).

As to the final *Colorado River* analytical factor, Precision's counterclaims which duplicate the claims already pending in Georgia can be resolved in the Georgia state court case. *See Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (affirming abstention and stating "Moorer had the ability to ensure diligent prosecution in the Marengo County State court action and thus the district court had no basis to believe that Moorer's rights would not be protected."). This factor, therefore, also weighs in favor of abstention.

The *Colorado River* analysis weighs in favor of abstention as to counterclaim counts I, II, and III which arise from hundreds of roof installations, but it appears to the court that the factors should be separately examined with regard to count IV of Precision's counterclaim, which does not arise from hundreds of installations, but arises from the contract for installation of a single roof at ABC's Montgomery, Alabama facility.

9

Precision urges in this case that if this court abstains from exercising jurisdiction, it must abstain exercising jurisdiction over the entire case. Precision cites no authority to support this argument. ABC argues that it did not duplicate and lodge its claims as counterclaims in Georgia, so it should be able to proceed here on its claims, which concern the installation that took place in Alabama and fall under Alabama laws.

Justice Rehnquist, writing for the plurality of the Court, recognized in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978) (per curiam), that there may be circumstances under which abstention may be exercised over less than an entire case. In that case, Justice Rehnquist explained that the court below had only stayed some of the claims after applying abstention principles, and not a federal claim which could concurrently be resolved by both courts, and that that claim had remained pending in federal court after the court abstained. *Id*. District courts have conducted *Colorado River* analysis and stayed some claims and allowed others to proceed. *See Giles v. ICG, Inc.*, 789 F. Supp. 2d 706, 714 (S.D.W. Va. 2011) (finding that grant of a partial stay under *Colorado River* will efficiently sever the issues to be determined by the federal and state courts); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008) (finding that "*Colorado River* and its progeny authorize this Court to stay only the class action claims in this case in favor of the Delaware Court of Chancery, even though other claims cannot be so stayed."); *Big O Tires, LLC v. Felix Bros.*, No. 10-CV-00362-PAB-KLM, 2011 WL 6181448, at *5 (D. Colo. Dec. 13, 2011) (bifurcating plaintiff's breach of contract claims from the rest of the action and staying proceedings as to the contract claims under *Colorado River*).

In this case, count IV of the counterclaim, involving Precision's contract with ABC for installation of a single roof, is also brought in the Georgia case, but unlike counterclaim counts I, II, and III, it is in the nature of a compulsory, not permissive, counterclaim in this case. *See* Fed. R. Civ. Pro. 13(a), (b). That is, ABC's claims concern its contract for installation of a particular roof and counterclaim count IV relates to that contract. While the danger of piecemeal litigation is implicated by two separate proceedings involving the same hundreds of roofing claims in hundreds of locations, the specific facility dispute in counterclaim count IV is distinct from those claims. As to counterclaim count IV, therefore, the *Colorado River* factors weigh against abstaining. Furthermore, it would be more efficient to proceed in this court on both ABC's claims and Precision's compulsory counterclaim. Therefore, in this unique case where there is a distinction between the types of claims brought, ie., claims arising from a single roof installation and claims arising from hundreds of roof installations in multiple states, this court is persuaded that it should abstain only from the claims concerning the hundreds of roof installations in counterclaim counts I, II, and III. Accordingly, the Motion to Dismiss is due to be DENIED as to counterclaim counts I, II, and III but the court will stay this case as to those claims. *See Moorer*, 374 F.3d at 998 (holding that a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine). The court now turns to the grounds for dismissal as to counterclaim count IV.

    C. Alabama Licensing Requirement as Ground for Dismissal

ABC argues that all of Precision's counterclaims must be dismissed because unlicensed contractors are barred from bringing lawsuits in Alabama to enforce contracts exceeding a certain amount, or any claims derived from those contracts, citing *Hawkins v. League*, 398 So. 2d

11

232 (Ala. 1981).

Precision admits that it does not have an Alabama license, but argues specifically as to counterclaim IV that the claim is not barred because the damages alleged by Precision arise from a period of time after a licensed contractor, Hammer, Inc., became the general contractor. Precision essentially argues that the licensing requirement does not bar its claim because it does not apply to subcontractors. Precision cites no authority in support of this argument.

Under Alabama law, a contractor engaged in general contracting who violates Alabama law by failing to obtain the necessary license, "cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party." *White-Spunner Const., Inc. v. Constr. Completion Co., LLC*, 103 So. 3d 781, 794 (Ala. 2012) (citations omitted). Alabama courts have made it clear that "courts will not be used to assist 'those who transgress the moral or criminal code.'" *Id.* This analysis was applied in *White-Spunner Const., Inc.* to both general contractors and subcontractors, with the reasoning that both are required to go through a licensing process. *Id.* In that case, a licensed general contractor subcontracted with a licensed party who subcontracted with an unlicensed party. The court reversed an award of damages to the subcontractor against the contractor on the basis that the subcontractor's contract with the unlicensed contractor was illegal due to the lack of a license. *Id.* at 794-95.

Under Alabama law, Precision, as an admitted unlicensed subcontractor, cannot sue for damages arising out of a contract for construction which without question meets the monetary amount. The claim in counterclaim IV, therefore, is due to be dismissed.[1]

## V. CONCLUSION

For the reasons discussed, the court finds that Colorado River abstention applies to counterclaims I, II, and III, and that counterclaim four is due to be dismissed. Accordingly, it is hereby ORDERED as follows:

1. The Motion to Dismiss (Doc. #25) is GRANTED as to counterclaim count IV.

2. The Motion to Dismiss (Doc. #25) is DENIED but this case is STAYED as to counterclaim counts I, III, and IIII pending disposition of *Precision Roofing and Consulting, LLC v. American Builders & Contractors Supply. Co., Inc. et al.*, Case No. 17-A0302202, pending the Superior Court of Gwinnett County, Georgia.

Done this 9th day of August, 2017.

/s/ W. Harold Albritton  
W. HAROLD ALBRITTON  
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] It would appear that other claims arising from the contract work on Plaintiff's facility in Alabama, if they were pled in counterclaim counts I, II, and III potentially would similarly be due to be dismissed. *Cf. Architectural Graphics & Const. Servs., Inc. v. Pitman*, 417 So. 2d 574, 576 (Ala. 1982) (in a suit on the note as opposed to a claim based on the contract, the court explained that a suit to enforce the contract is foreclosed to an unlicensed contractor, so must be a suit by the same unlicensed contractor to collect on a note secured by a mortgage given in consideration of that contract). As noted, however, Precision has clarified in its brief that counterclaim counts I, II, and III are not based on any contract work on Plaintiff's facility in Alabama. (Doc. #31 at p.1).